IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DURWIN C. BOYD,                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        CASE NO.  2:13-cv-354-MEF
                                         )          (WO – Do Not Publish)
LEEPOSY DANIELS, *et al.*,                )
                                         )
        Defendants.                      )

## MEMORANDUM OPINION AND ORDER

Plaintiff Durwin Boyd ("Boyd") brings suit against Defendants Corizon, Inc. ("Corizon"), Warden Leeposy Daniels ("Warden Daniels"), Sergeant Watson ("Sgt. Watson"), and Lieutenant Brumley ("Lt. Brumley") for violations of his constitutional rights under 42 U.S.C. §§ 1983, 1985(3), and 1986, and for various state law claims.  Before the Court is a Motion to Dismiss (Doc. #21) filed by Warden Daniels, Sgt. Watson, and Lt. Brumley (collectively, the "Individual Defendants") for failure to state a claim under Rule 12(b)(6) and on the basis of qualified immunity.[1]  For the reasons discussed below, the Individual Defendants' motion is due to be GRANTED as to all federal claims and the pendent state law claims are due to be DISMISSED WITHOUT PREJUDICE.

### I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331,

---

[1]  Corizon filed an answer on June 13, 2013 (Doc. #9) and, as such, has not joined in this motion.

1343(a), and 1367.  Additionally, the Individual Defendants have not argued that the Court lacks personal jurisdiction over them.  Pursuant to 28 U.S.C. § 1391(b), venue is appropriate in this district.

## II. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the court accepts the plaintiff's allegations as true and reads them in the light most favorable to the plaintiff.  *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted).  Further, a district court must favor the plaintiff with "all reasonable inferences from the allegations in the complaint." *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully."  *Id.*  While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation and citations omitted).  Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice.  *Id.* Courts are also not "bound to accept as true a legal conclusion couched as a factual

allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. STATEMENT OF FACTS

Since this case is before the Court on a Motion to Dismiss, the Court accepts the following allegations in Boyd's complaint as true:

At all relevant times, Boyd was an inmate at the Elmore Correctional Facility in Elmore, Alabama.  Corizon is the contract health care service provider for the Alabama Department of Corrections ("ADOC").  Corizon employs doctors and nurses at both the Elmore Correctional Facility and Staton Correctional Facility.

On or about May 23, 2011, while on work release, Boyd's right thumb was crushed by a garbage truck clamp, which was inadvertently lowered by another inmate.  Boyd's thumb was split in half and his finger nail was detached.

After the injury, Boyd was immediately returned to the Elmore Correctional Facility for treatment.  Upon arriving, Boyd was forced to wait approximately thirty minutes before being taken to the Staton Infirmary Facility, located at Staton Correctional Facility, which is also in Elmore, Alabama.  Once at the Staton Infirmary Facility, a Corizon nurse tended to Boyd's wound, and, after several hours of waiting, Boyd was seen by a Corizon doctor.  The doctor subsequently sent Boyd back to the Elmore Correctional Facility to await further treatment by a specialist.  Boyd was not given any antibiotics or pain relievers.

Over night, Boyd's thumb bled profusely onto his clothes and bedding.  The next morning, May 24, 2011, Boyd was taken to see a specialist, Dr. Kenneth Taylor ("Dr. Taylor").  Dr. Taylor scheduled emergency surgery for the next morning, May 25, 2011.

Boyd was given prescription antibiotics and pain relievers after the surgery and returned to the Elmore Correctional Facility. Two days after surgery, Boyd made a formal request to receive proper treatment because his surgical dressing had not been changed, and he had not been given pain relief medication or antibiotics. Corizon's Nurse Rudley denied this request.

On June 1, after five days of not receiving proper treatment following his surgery, a Corizon nurse finally changed Boyd's surgical dressing and administered his medicine. Boyd was in "severe pain" and his thumb was "oozing green and yellow mucus/fluids." Later that day, Boyd returned to Dr. Taylor for a follow up appointment. Boyd informed Dr. Taylor that he was receiving improper treatment by the Corizon nurses. To combat the infection caused by the nurses' failure to change his bandages and to administer antibiotics, Dr. Taylor ordered a stronger antibiotic and directed the Corizon nurses to change Boyd's surgical dressing and to administer his antibiotics and pain relievers on a daily basis. Despite Dr. Taylor's admonition, the Corizon nurses did not properly treat Boyd's injury. Boyd went without his daily dose of antibiotics and pain relievers, and he was forced to buy bandages from other inmates. According to Boyd, his family called Warden Daniels "on several occasions" throughout this ordeal, and Warden Daniels told them that Boyd was "in good hands and was doing fine."

Sgt. Watson and Lt. Brumley ordered Boyd to return to work release "within weeks" of his surgery. Boyd was again required to work garbage truck detail, the same job detail that he was working when he was injured. Because he is an inmate, Boyd was forced to accept his work assignment in spite of his protests. Boyd alleges that his thumb is now permanently

4

deformed and does not operate properly because of the medical care he received while at Elmore Correctional Facility and because he was prematurely forced to return to work on garbage truck detail before his injury fully healed. Boyd further alleges that he was in continuous fear of the high risk of contracting a serious infection as a result of working near garbage when his thumb was not fully healed.

## IV. DISCUSSION

Boyd brings a Fourteenth Amendment claim against the Individual Defendants[2] alleging violations of his substantive due process right to bodily integrity based on (1) their failure to properly care for and to treat his injured thumb,[3] (2) Warden Daniels's negligent training and supervision, and (3) Sgt. Watson and Lt. Brumley's order that Boyd return to garbage truck detail before his wound fully healed (Count 1). Boyd also brings an Eighth Amendment claim against the Individual Defendants for deliberate indifference arising from the same conduct alleged in his Fourteenth Amendment claim (Count 2) as well as claims for neglect to prevent civil conspiracy under 42 U.S.C. §§ 1985(3) and 1986 (Count 3) and invidiously discriminatory animus under 42 U.S.C. § 1985(3) (Count 4). Finally, Boyd asserts state law wantonness (Count 5) and negligence (Count 6) claims.

## A. Official Capacity Claims

Boyd asserts his claims against the Individual Defendants in both their individual and

---

[2] Boyd also brings these claims against Corizon.

[3] Boyd makes clear in his response brief that he "is not claiming any Defendant is responsible for the [thumb] injury itself." (Doc. #29.)

official capacities, but he only seeks monetary relief and attorney's fees for his claims. There is no dispute that the Individual Defendants are all officials with ADOC, a state agency. Because the Eleventh Amendment bars suits for monetary relief against a state or its instrumentalities by its own citizens, Boyd's official capacity claims against the Individual Defendants are DISMISSED WITH PREJUDICE. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Reeves v. Thigpen*, 879 F. Supp. 1153, 1178 (M.D. Ala. 1995) (citing *Toney v. Alabama*, 784 F. Supp. 1542, 1545 (M.D. Ala. 1992)) ("Clearly, the Department is a state agency, and therefore its officials, the DOC Defendants, are protected by the Eleventh Amendment from suits seeking damages from Alabama's treasury.").

**B.      Individual Capacity Claims**

**1.      Section 1985(3) and 1986 Claims (Counts 3 and 4)**

Boyd's §§ 1985(3) and 1986 claims are due to be dismissed because Boyd has abandoned those claims. Courts in the Eleventh Circuit and beyond have held that the failure of a party to respond to or oppose a pending motion to dismiss constitutes abandonment of those claims. *See, e.g.*, *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding that plaintiff abandoned claim by failing to defend it in response to a motion to dismiss); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and to argue an issue before the district court is grounds for declaring it abandoned); *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (concluding that a plaintiff's failure to respond to claims in a defendant's motion to dismiss resulted in dismissal of those

claims as abandoned). Boyd has failed to respond in any way to the Individual Defendants'

request for dismissal of his §§ 1985 and 1986 claims. This inaction, in the Court's opinion,

equates to abandonment of those claims. *See Lyles v. City of Riviera Beach, Fla.*, 126 F.3d

1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate

arguments"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)

("There is no burden upon the district court to distill every potential argument that could be

made based upon the materials before it."). Accordingly, Boyd's §§ 1985(3) and 1986

claims (Counts 3 and 4) are DISMISSED WITH PREJUDICE.

### 2.      Fourteenth Amendment Substantive Due Process Claim (Count 1)

Boyd claims that the Individual Defendants violated his Fourteenth Amendment

substantive due process rights to bodily integrity by failing to properly care for the severe

thumb injury he received while on work release and by forcing him to return to garbage truck

detail before his injury finished healing. Boyd also alleges that Warden Daniels's negligent

training and supervision exacerbated his injury in violation of his right to bodily integrity.

The Supreme Court has made clear that "[w]here a particular Amendment provides an

explicit textual source of constitutional protection against a particular government behavior,

that Amendment, not the more generalized notion of substantive due process, must be the

guide for analyzing these claims." *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citations

omitted). The Eighth Amendment provides explicit constitutional protection for claims by

prisoners against correctional officers for deliberate indifference. *See Jones v. Taylor*, 2010

WL 5638567, at *6 (M.D. Ga. Dec. 10, 2010) (citing *Harris v. Coweta County*, 21 F.3d 388,

393 n.6 (11th Cir. 1994)); *see also Graham v. Connor*, 490 U.S. 386, 394 (1989) (describing the Eighth Amendment's ban on cruel and unusual punishment as one of two "primary sources of constitutional protection against physically abusive governmental conduct").

In light of these directives, because Boyd was imprisoned at the time of the alleged violations, his claims are properly brought for deliberate indifference to serious medical needs under the Eighth Amendment. He is not entitled to bring an independent claim under the Fourteenth Amendment for violations of his substantive due process rights based on the same alleged conduct. *See Edwards v. Gilbert*, 867 F.2d 1271, 1274 (11th Cir. 1989) (citing *Whitley v. Albers*, 475 U.S. 312, 372 (1986)) (holding that "[i]f [plaintiff] is entitled to protection under the eighth amendment, then [plaintiff] is afforded 'no greater [substantive] protection' by the due process clause"). Accordingly, Boyd's Fourteenth Amendment claim (Count 1) is DISMISSED WITH PREJUDICE.

## C.    Eighth Amendment Claim (Count 2)

To sufficiently state a claim for § 1983 individual liability, a plaintiff must allege that (1) he was deprived of a right secured by the United States Constitution or a federal statute, and (2) the act or omission causing the deprivation was committed by an individual acting under color of state law. *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987).

The Individual Defendants move to dismiss Boyd's Eighth Amendment claim on the grounds of qualified immunity. (Doc. #21.) "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates

no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (citations and internal quotations omitted). The doctrine aims to focus government officials on "'their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or who is knowingly violating federal law.'" *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) (quoting *Lee*, 284 F.3d at 1194).

The examination of a qualified immunity defense involves a three-part analysis. First, the official must establish that he was performing discretionary acts. If the government official was acting within his discretionary authority, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136–37 (11th Cir. 2007). At this point, the court must grant the official qualified immunity unless the plaintiff's alleged facts, accepted as true, show (1) that there was a violation of the constitution or federal law and (2) that the illegality of the officer's actions was clearly established at the time of the incident. *Hoyt*, 672 F.3d at 977 (citing *Lee*, 284 F.3d at 1194). In *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Supreme Court instructed lower federal courts to use their sound discretion to decide which prong of the qualified immunity to address first.

### 1. Discretionary Authority

At the outset, Boyd disputes whether the Individual Defendants were acting within the scope of their discretionary authority when they engaged in conduct that allegedly violated Boyd's constitutional rights. In order for the Individual Defendants to establish they

were acting within the scope of their discretionary authority, they must show "objective circumstances which would compel the conclusion that [their] actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. 1981)).   Thus, the term "discretionary authority" includes "all actions of governmental official[s] that (1) 'were undertaken pursuant to the performance of [their] duties' and (2) were 'within the scope of [their] authority.'" *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich*, 841 F.2d at 1564).  "Determination that an officer was acting within his discretionary authority is quite a low hurdle to clear."  *Godby v. Montgomery Cnty. Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1998).

The Court finds that Warden Daniels, Sgt. Watson, and Lt. Brumley were acting within the scope of their discretionary authority at all times relevant to these proceedings. Making decisions regarding the level of medical care an inmate receives and when and under what circumstances an inmate returns to work release are undeniably part of their normal job duties.  Having established that the Individual Defendants were acting within the scope of their discretionary authority, the Court turns to the issue of whether Boyd has met his burden of showing the existence of a constitutional violation and that the illegality of the officers' actions was clearly established at the time of the incident.  Since the Court finds that, under the facts alleged by Boyd, the Individual Defendants did not violate his constitutional rights under the Eighth Amendment, the Court addresses only the first prong of the qualified immunity analysis.

10

## 2.    Constitutional Violation

Boyd alleges that the Individual Defendants violated his rights under the Eighth Amendment by providing inadequate medical care in relation to his thumb injury and by requiring him to return to work before the injury fully healed.  Specifically, Boyd alleges (1) that Sgt. Watson and Lt. Brumley acted with reckless disregard for his life or safety when they ordered him to return to garbage truck detail while he was still recovering from surgery and a serious infection, and (2) that Warden Daniels acted with deliberate indifference to his serious medical need by failing to ensure he was receiving proper medical care after his surgery and by negligently training and supervising prison officials and Corizon staff.

 Deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to [the] serious medical needs of [a] prisoner [] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment.").  In order to establish deliberate indifference to a serious medical need, a plaintiff must show (1) a serious medical need, (2) defendants' deliberate indifference to that need, and (3) causation between that indifference and the plaintiff's injury.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).  "[N]ot every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Farrow v. West,* 320 F.3d 1235, 1242 (11th Cir. 2003) (citations omitted).  Medical treatment violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

11

Therefore, negligent acts or malpractice are insufficient to form a basis of a claim for deliberate indifference. *See, e.g.*, *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmar v. Brennan*, 511 U.S. 825, 838 (1994). Moreover, a difference of opinion between an inmate and prison medical staff or prison officials relating to a diagnosis or treatment regiment is not a constitutional violation. *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994) (internal citations and quotations omitted). In the Eleventh Circuit, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1187 (quotation marks and citations omitted). "In either of these situations, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Farrow*, 320 F.3d at 1243 (internal citations and quotations omitted).

Deliberate indifference to an inmate's serious medical need occurs when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference." *Farmar*, 511 U.S. at 837. Put differently, to establish deliberate indifference a prisoner must show "an objectively serious need, an objectively insufficient response, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Thus, "[d]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) conduct that is more than mere negligence." *McElligott*, 182 F.3d at 1255.

### a.   Sgt. Watson and Lt. Brumley

Boyd claims that Sgt. Watson and Lt. Brumley violated his Eighth Amendment rights by forcing him to return to work release before his thumb injury had properly healed. Boyd's complaint fails to state a plausible claim of deliberate indifference against Sgt. Watson and Lt. Brumley because it does not allege that Sgt. Watson and Lt. Brumley had any subjective knowledge that returning him to work release "within weeks of surgery" would pose a risk of serious harm. For example, Boyd never alleges that he was not medically cleared to return to work at the time he was re-assigned, that Sgt. Watson and Lt. Brumley knew Boyd was not medically cleared to return to work at the time he was re-assigned, that Sgt. Watson and Lt. Brumley inferred from those facts that prematurely returning Boyd to work would threaten a serious injury, such as a high risk of infection, and that they subsequently disregarded that risk and required Boyd to return to work release anyway. *See Taylor*, 221 F.3d at 1258; *Farmar*, 511 U.S. at 837. Moreover, Boyd's claim fails to the extent Sgt.

13

Watson and Lt. Brumley relied on the judgment of Corizon medical professionals in determining when Boyd could return to work release.  Prison officials "are entitled to rely on medical judgments made by medical professionals responsible for medical care." *Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007) (citations omitted).  Sgt. Watson and Lt. Brumley did not act with deliberate indifference merely because they required Boyd to return to work release earlier than he wanted.  *See Waldrop*, 871 F.2d at 1033 (difference of opinion between an inmate and prison medical staff or prison officials does not constitute deliberate indifference). Because Boyd's complaint does not satisfy the subjective element of the deliberate indifference standard, his Eighth Amendment claims against Sgt. Watson and Lt. Brumley (Count 2) fail and are DISMISSED WITH PREJUDICE.

### b.    Warden Daniels

Boyd alleges that Warden Daniels violated his Eighth Amendment rights by failing to ensure his injury was properly treated and by negligently training and supervising prison officials and Corizon staff.  In his complaint, Boyd alleges that "Warden [Daniels] was aware of Plaintiff's injury, surgery, and the order from Dr. Taylor" stating that Corizon nurses were required to change Boyd's wound dressing daily and to administer pain medication and antibiotics.  Moreover, Boyd alleges that his family called Warden Daniels on several occasions and that Warden Daniels told them that Boyd was "in good hands and was doing fine."  Boyd alleges that Warden Daniels's acts and omissions caused him "to anguish for

endless hours in severe pain" and that his thumb is now permanently damaged as a result.[4] Boyd's complaint, however, fails to state a plausible claim of deliberate indifference against Warden Daniels because it does not allege that Warden Daniels was aware of a serious risk of harm posed by the alleged inadequate care of Boyd's thumb.

For Warden Daniels to be deliberately indifferent, there must be allegations that he knew of facts indicating that significant risk of harm existed because of the prison staff's inadequate medical care, that from those facts he drew the inference that the significant risk of harm existed, and that he disregarded that risk by failing to act. *See Taylor*, 221 F.3d at 1258. None of Boyd's allegations, taken as true, state a plausible claim that Warden Daniels subjectively knew of facts from which he could infer that Boyd's treatment, or lack thereof, posed a serious risk to his health. While Warden Daniels may have been aware of Boyd's injury and course of treatment, there are no allegations that he was aware that the treatment was being administered inadequately. There are no allegations that Warden Daniels knew the Corizon nurses had not been changing Boyd's dressing every day, that he was not receiving his pain medication or antibiotics for five days, or that his wound was oozing green and yellow mucus.[5] In fact, Warden Daniels's statement that Boyd was "in good hands and

---

[4] It appears Boyd's sole argument is that Warden Daniels was deliberately indifferent to the serious risk posed by prison officials and Corizon nurses' inadequate treatment of his injury after his emergency surgery on May 25, 2011. Boyd does not argue that Warden Daniels was deliberately indifferent to his medical needs prior to that time, and the Court finds this supported by the facts alleged in Boyd's complaint.

[5] In his response brief, Boyd states that he believes his surgeon personally told Warden Daniels over the telephone that Boyd's dressing was to be changed on a daily basis and that Boyd should receive antibiotics and pain relievers every day as well. Factual allegations newly introduced

was doing fine" suggests instead that it was Warden Daniels's understanding that Boyd was receiving proper treatment for his injury and that the treatment was being administered adequately.  Moreover, Warden Daniels is entitled to rely on the medical judgments made by medical professionals responsible for Boyd's care.  *See Cameron*, 525 F. Supp. 2d at 1307 (citations omitted) ("The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent constitutional wrong.").  And, the allegations of the medical treatment Boyd did receive, namely, visits with multiple nurses, doctors, and a specialist, and emergency surgery, all of which the Warden was allegedly aware of, makes it implausible that Warden Daniels had actual knowledge that Boyd was receiving constitutionally deficient treatment at the hands of prison staff or Corizon nurses.[6]

　　To the extent Boyd alleged facts suggesting that Warden Daniels should have known that Boyd's inadequate treatment or premature return to work release posed a serious risk of

---

in Boyd's brief cannot be considered for purposes of a motion to dismiss.  *See Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984) ("Consideration of matters beyond the complaint is improper in the context of a motion to dismiss . . .").  Even if the Court could consider this fact as true, the complaint would still fail to state a claim because even though Warden Daniels knew of the treatment regiment, there is no indication that he was aware the regiment was not being followed by prison staff.

　　[6]  Furthermore, there are no allegations that Warden Daniels was aware Boyd had been returned to work release, let alone allegations that Warden Daniels was subjectively aware of facts from which he could infer that returning to work release posed a significant risk of harm to Boyd's health.  Therefore, Boyd has not alleged facts showing that Warden Daniels was deliberately indifferent to Boyd's serious medical needs with regards to Brumley and Watons's decision to return Boyd to work release.

harm, these allegations do not rise to the level of deliberate indifference and, therefore, do not state a claim for a constitutional violation. *See Farmar*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmar*, 511 U.S. at 838).

Boyd also alleges that Warden Daniels is responsible for the negligent supervision and training of other correctional officers and Corizon staff.  It is well-settled that Warden Daniels, in his role as supervisor, cannot be liable under § 1983 for the actions of his subordinates under a theory of respondeat superior or vicarious liability. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993); *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990).  Supervisors can only be held liable for their own unconstitutional acts or omission. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone*, 326 F.3d at 1360.  Thus, Warden Daniels is only liable for the medical treatment provided to Boyd if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional violation." *Cottone*, 326 F.3d at 1360.  Warden Daniels could also be liable to Boyd in his capacity as a supervisor if he personally instigated or adopted a policy that violated Boyd's constitutional rights. *Hill,* 40 F.3d at 1192 (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985)).  Boyd, however, has alleged no facts upon

17

which a plausible claim could be based that Warden Daniels personally participated in the alleged unconstitutional conduct.  There are no allegations that Warden Daniels designed or administered any of Boyd's medical treatment or that Warden Daniels interfered with the proper administration of Boyd's treatment.  Nor are there allegations that he instigated or adopted a policy that violated Boyd's constitutional rights.  Rather, it is clear from the allegations in the complaint that Corizon nurses and physicians and other prison officials made the challenged medical decisions.

Warden Daniels could also be liable to Boyd for decisions of medical personnel and prison officials if his actions bear a causal relationship to the purported violation of Boyd's constitutional rights.  To demonstrate a causal connection, Boyd must alleged facts which establish either (1) "a custom or policy [that] result[s] in the deliberate indifference to constitutional rights or . . . facts [that] support an inference that the supervisor directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," or (2) "a history of widespread abuse [that] put [] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."  *Cottone*, 326 F.3d at 1360 (internal quotations and citations omitted) (second alteration in original).  Again, Boyd has not alleged a plausible claim that Warden Daniels adopted a custom or policy that resulted in deliberate indifference to his constitutional rights, that Warden Daniels directed subordinates to act unlawfully or knew subordinates would act unlawfully and failed to stop them from doing so, or that there were incidences of widespread abuse.

18

Accordingly, there are no allegations that Warden Daniels was aware of specific facts from which an inference could be drawn that a substantial risk of harm was posed to Boyd because of the prison officials' or Corizon's care for Boyd's thumb, that Warden Daniels actually drew such an inference, and that he subsequently ignored it. Nor are there sufficient allegations to state a claim against Warden Daniels for any constitutional violations arising from Warden Daniels's role as supervisor. Therefore, Boyd has failed to establish that Warden Daniels was deliberately indifferent to his serious medical needs and his Eighth Amendment claim against Warden Daniels (Count 2) is DISMISSED WITH PREJUDICE.

**D.     State Law Claims**

Only Boyd's state law claims for wantonness (Count 5) and negligence (Count 6) remain. The Court has supplemental subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1367. Section 1367(c)(3) provides that a "district court may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction." Because the federal claims against the Individual Defendants over which this Court had original jurisdiction have been resolved against Boyd, the Court declines to exercise its supplemental jurisdiction over the state law claims against the Individual Defendants and, instead, dismisses them without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). This dismissal should not work to Boyd's disadvantage if he chooses to bring these claims in State court because the statute of

19

limitations for these claims are tolled during the pendency of this action.  *See* 28 U.S.C. § 1367(d).

## V. CONCLUSION

Based on the foregoing, it is hereby ORDERED that the Individual Defendants' Motion to Dismiss (Doc. #21) is GRANTED.  All official capacity claims in the complaint against Warden Daniels, Sgt. Watson, and Lt. Brumley are DISMISSED WITH PREJUDICE.  Counts 1–4 against Warden Daniels, Sgt. Watson, and Lt. Brumley in their individual capacities are DISMISSED WITH PREJUDICE, and Counts 5–6 against Warden Daniels, Sgt. Watson, and Lt. Brumley in their individual capacities are DISMISSED WITHOUT PREJUDICE.

DONE this the 24th day of March, 2014.

_____/s/  Mark E. Fuller_____
UNITED STATES DISTRICT JUDGE